UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Darrell D. Smith, | Case No. 22-cv-1704 (NEB/DJF) |
| Petitioner, | |
| v. | ORDER AND REPORT AND RECOMMENDATION |
| B. Eischen, *FPC Duluth, Warden*, | |
| Respondent. | |

### INTRODUCTION

This matter is before the Court on Petitioner Darrell D. Smith's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") (ECF No. 1), motion for leave to file a motion for summary judgment (ECF No. 33), Motion for Summary Judgment (ECF No. 34), and motion for leave to reply to Respondent's Supplemental Response (ECF No. 31).[1] Finding no hearing necessary, the Court recommends Mr. Smith's Petition be denied, his motions be denied, and this matter be dismissed with prejudice.[2]

### BACKGROUND

**A.     Mr. Smith's Incarceration**

Mr. Smith is incarcerated at the Federal Prison Camp in Duluth, Minnesota (ECF No. 1 at 1). He is serving an aggregated 175-month term of imprisonment followed by 3-year term of supervised release for aggravated identity theft and wire fraud, in violation of 18 U.S.C.

---

[1] The undersigned United States Magistrate Judge considers this matter pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

[2] As set forth below, there are no material facts in dispute. Accordingly, an evidentiary hearing is unnecessary. *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996).

§§ 1028A(a)(1), 1343 (ECF No. 12 at ¶ 3; 12-1 (Ex. A) at 2- 3).  His current projected release date, via Good Conduct Time credit, is October 1, 2029.  (ECF No. 12 at ¶ 3; 12-1 (Ex. A) at 1.)

**B.     The First Step Act**

In December 2018, the First Step Act ("FSA") became law.  *See* 18 U.S.C. § 3632.  The FSA contains various carceral reforms, including the potential for certain federal inmates to reduce the length of their sentences by accumulating "Time Credits."  *See id.*  Specifically, the FSA provides, "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate described by statute.  *Id.* section 3632(d)(4).  Inmates can earn ten days of Time Credits for every thirty days of successful participation in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PAs"), and eligible inmates with a low risk of recidivism can earn an additional five days of FSA Time Credits for every thirty days of successful participation.  *Id.*  Based on his recidivism risk, Mr. Smith is eligible to earn 15 days of FSA Time Credits for every 30-day period of successful programming.  (ECF No. 23¶ 21; ECF No. 23-5 (Ex. E) at 1.)

An eligible inmate generally is not considered to be "successfully participating" in EBRR programming or PAs in situations including, but not limited to:  (i) Placement in a Special Housing Unit; (ii) Designation status outside the institution (*e.g.*, for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.); (iii) Temporary transfer to the custody of another Federal or non–Federal government agency (*e.g.*, on state or Federal writ, transfer to state custody for service of sentence, etc.); (iv) Placement in mental health/psychiatric holds; or (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended).  28 C.F.R. § 523.41(c)(4)(i)-(v).  Moreover, an inmate may lose FSA

Time Credits "for violation of the requirements or rules of an EBRR Program or PA." 28 C.F.R. § 523.43(a). An inmate may appeal that loss "through the Bureau's Administrative Remedy Program." *Id.* section (b).

For most inmates who earn FSA Time Credits,[3] the Bureau of Prisons ("BOP") may apply the Time Credits towards an earlier transfer to supervised release or prerelease custody if the inmate: (1) has earned Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment; (2) shown through periodic risk reassessments either a demonstrated recidivism risk reduction or maintenance of a minimum or low recidivism risk during the term of imprisonment; and (3) had the remainder of his or her imposed term of imprisonment computed under applicable law (together the "General Requirements")). 18 U.S.C. § 3624(g); *see also* 28 C.F.R. § 523.44(b).

In addition to the General Requirements, the FSA imposes certain prerelease requirements. Specifically, the FSA states the BOP may apply earned FSA Time Credits towards prerelease custody only when an eligible inmate has maintained a minimum or low recidivism risk level through his or her last two risk assessments or had a petition to be transferred to prerelease custody approved by the Warden upon consideration that: (1) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release; (2) the prisoner has made a good-faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and (3) the prisoner is unlikely to recidivate (together ("Prerelease Requirements"). 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(c).

---

[3] Deportable inmates may earn Time Credits but are not eligible to apply them. *Id.* section E; *see also* 28 C.F.R. § 523.44(a)(2).

In addition to the General Requirements and Prerelease Requirements, the BOP may apply earned FSA Time Credits to early supervised release only when: (1) an eligible inmate has maintained a minimum or low recidivism risk through their last risk and needs assessment; (2) the sentencing court has imposed a term of supervised release after imprisonment; and (3) the application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date when transfer to supervised release otherwise would have occurred. 28 C.F.R. § 523.44(d).

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") modified the FSA by lengthening the amount of time a prisoner could be placed on home confinement. *See* Coronavirus Aid, Relief, and Economic Security, H.R. 748, 116th Cong. § 12003(b)(2) (2020). The Attorney General issued directives on March 26, 2020 and April 3, 2020, "for the BOP to review all inmates with COVID-19 risk factors as described by the Centers for Disease Control and Prevention ('CDC') to determine which inmates are suitable for home confinement." *Wolf v. Fikes*, Civ. No. 22-194 (PJS-BRT), 2022 WL 4239095, at * 2 (D. Minn. Aug. 16, 2022). The Cares Act thus "expanded the potential opportunities for home confinement." *Id.*

**C.     Mr. Smith's Petition and Subsequent Filings**

Mr. Smith filed his Petition on July 1, 2022 (ECF No. 1). He subsequently filed several self-styled motions that sought to amend or expand on the arguments in his Petition (ECF Nos. 14, 16, 18), which the Court granted (ECF No. 21). Mr. Smith seeks to have the BOP calculate and immediately apply his earned FSA Time Credits to his sentence computation and Percentage of Statutory Term Served. (ECF Nos. 1, 14, 16, 18.)

4

In his initial Petition, Mr. Smith claims the BOP's failure to apply his FSA Time Credits delayed his application for release under the CARES Act. (ECF No. 1 at 2, 7.) In his first supplemental response, Mr. Smith argues there is no legal distinction between "earning" and "applying" FSA Time Credits and asks the BOP to immediately apply his FSA Time Credits. (ECF No. 14 at 2-5, 8.) He claims the BOP wrongly implements a "two years to the door" policy of delaying the application of FSA Time Credits until an inmate is on the verge of being released, and that doing so deprives him of numerous FSA Time Credits he will be unable to use. (*Id.* at 2.) Mr. Smith also presents his own formula under which he combines his FSA Time Credits, Good Conduct Time credit, and potential for release as an elderly offender to calculate a release date in 2025. (*Id.* at 3.)

In his second supplemental response, Mr. Smith claims the BOP incorrectly calculated the FSA Time Credits he has earned, including by failing to reflect the number of hours he dedicated to the UNICOR program and an Apprenticeship Quality Control course, and that the BOP failed to apply his FSA Time Credits to the calculation of his Percentage of Statutory Term Served. (ECF No. 16 at 2, 10-21.) Mr. Smith contends FSA Time Credits "functionally shorten" an inmate's term of imprisonment and therefore must be reflected when calculating the percentage of time served towards the inmate's statutory release date. (*Id.*) Mr. Smith further claims that FSA Time Credits authorized under 18 U.S.C. § 3632 and Good Conduct Time Credits authorized under 18 U.S.C. § 3624 are functionally identical because both are "earned." (*Id.* at 3-4.) Mr. Smith asserts, "FSA [Time] [C]redits are in addition to [Good Conduct Time] credits and Elderly Offender time calculations – all three should be equal in their application toward [statutory] time [calculations]." (*Id.* at 9.)

5

In his third supplemental response, Mr. Smith reiterates that his FSA Time Credits should be reflected in his Percentage of Statutory Term Served, that all of his possible time credits should be "stacked," and that according to his own formula, he is eligible for release to home confinement in July 2023. (EC F No. 18 at 3.)

Respondent filed a response to Mr. Smith's initial Petition on August 30, 2022 (ECF No. 10). On November 9, 2022, the Court ordered Respondent to respond to Mr. Smith's additional arguments and advised that it would not permit any other documents or memoranda to be filed in connection with the Petition without seeking prior leave from the Court (ECF No. 21). Respondent timely filed a supplemental response on November 30, 2022 (ECF No. 22).

Mr. Smith later filed several motions and related documents (ECF Nos. 25-26, 28- 29) in an effort to circumvent the Court's November 9 Order and reply to Respondent's supplemental response without seeking prior leave. The Court ordered those filings stricken from the record (ECF Nos. 27, 30). On December 16, 2022, Mr. Smith filed a self-styled letter motion seeking leave to file yet another response ("Letter Motion") (ECF No. 31), and on February 27, 2023, he filed a motion seeking leave to file a motion for summary judgment (ECF No. 33) and a Motion for Summary Judgment, which reiterates the arguments in his Petition (ECF No. 34).

D.     **Respondent's Arguments for Dismissal**

Respondent filed his response to Mr. Smith's initial Petition on August 30, 2022 (ECF No. 10). Respondent argued at that time that the Petition should be dismissed because: (1) Mr. Smith failed to exhaust his administrative remedies; (2) his request to have the BOP calculate his FSA Time Credits was moot because the BOP already calculated that Mr. Smith had earned 675 days of FSA Time Credits; and (3) Mr. Smith's request to have his FSA Time Credits applied was premature, because the FSA explicitly limits the application of FSA Time Credits until the number

of earned Time Credits equals the remainder of the inmate's term of imprisonment. (ECF No. 10 at 13-19.)

On October 6, 2022—while Mr. Smith's Petition was pending—the BOP issued its final response to Mr. Smith's request for administrative review of the issues raised in his Petition. (ECF No. 19.) As a result, Respondent conceded at that point that Mr. Smith had exhausted his administrative remedies (ECF No. 22 at 4-5) but maintained its other grounds for dismissal (*id.* at 5-15). Respondent also argues the BOP's calculation of the FSA Time Credits Mr. Smith has earned is correct. (*Id*. at 14-15.)

Because the record reflects that the BOP had calculated Mr. Smith's FSA Time Credits as of October 7, 2022 (ECF No. 23 ¶¶ 20-21; ECF No. 23-5 (Ex. E)), the Court addresses Mr. Smith's challenge to the BOP's calculation of those FSA Time Credits, and his argument that the BOP must immediately apply them to his projected release date and Percentage of Statutory Term Served. The Court also addresses Mr. Smith's unresolved motions.

## DISCUSSION

I.  **FSA Time Credit Calculation**

The BOP calculated Petitioner's FSA Time Credits on October 7, 2022. (ECF No. 23 ¶ 21; ECF No. 23-5 (Ex. E) at 1.) As of that date, the BOP determined that, based on his continuing low recidivism risk, Mr. Smith was eligible to earn 15 days of FSA Time Credits for every 30-day period of successful programming. (*Id.*) The BOP further determined Mr. Smith had accrued all available days of FSA Time Credits except for a 24-day period in October and November 2021, while he was in transit between two facilities. (*Id.*) Based on these findings, the BOP calculated that—as of October 7, 2022—he had earned 675 FSA Time Credits. (*Id.*)

7

Mr. Smith claims the BOP incorrectly calculated his earned FSA Time Credits by failing to reflect the number of hours he dedicated to the UNICOR program and an Apprenticeship Quality Control course. (ECF No. 16 at 1, 9-12, 18.) Mr. Smith specifically asserts the BOP should not have excluded 24 days from his credit calculation while he was in transit between facilities. He states he is not so much concerned about the loss of credited time for that 24-day period, as that the BOP should have "filled in" the gap in his employment resulting from the transfer with extra credit for the time working in the UNICOR and Apprenticeship Quality Control programs. (*Id.* at 9-10). According to Mr. Smith, the FSA does not limit maximum Time Credits to 15 per 30-day period. (*Id.* at 11, "In this way, it seems possible to me that one can earn more than 15 FSA days for every '30 calendar days', as long as within those 30 days he is both (1) working fulltime and (2) exerting special effort to take additional 'recidivism reduction programming" classes.".)

The Court agrees with the BOP that the 24-day period from October 9, 2021 to November 1, 2021 was subject to exclusion from Mr. Smith's FSA calculation because Mr. Smith was in transit during that period, such that he could not accrue programming days during that time. 28 C.F.R. § 523.41(c)(4)(iii) (temporary transfer to the custody of another government agency does not count as successful participation in EBRR programming or PAs). And while Mr. Smith may feel that his activities in certain EBRRs and PAs, such as UNICOR and the Apprenticeship Program, are more arduous than others (ECF No. 16 at 10-11), or should be credited more because they overlapped with other programming, the FSA does not require that the BOP award credits for each *program* completed; rather the FSA provides that prisoners "shall earn … time credits for every 30 days of successful participation in evidence-based recidivism reduction *programming*." 18 U.S.C. § 3632(d)(4)(A)(i) (emphasis added). Whether a prisoner participates in a particularly arduous program, or participates in more than one program on any given day, he is "participati[ng]

8

in evidence-based recidivism reduction programming," *id*., and is equally eligible to receive time credits for that day of participation. "Congress made clear that a prisoner earns First Step Act Time Credits based on the number of days in which they participate in eligible programs, not the number of eligible programs in which they participate." *Dale v. Hawkins*, No. H-22-3224, 2023 4 WL 2601215, at *5 (S.D. Tex. Mar. 22, 2023); *accord Bray v. Yates*, Civ. No. 2:22-142-JTR, 2023 WL 2894918, at *6 (E.D. Ark. Apr. 11, 2023) (citing *Burruss v. Hawkins*, No. H-22-2740, 2023 WL 319955, at *6 (S.D. Tex. Jan. 19, 2023)). The Court must give effect to the unambiguous language of the statute as written. *See Chevron U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

Moreover, in Mr. Smith's subsequent Motion for Summary Judgment (ECF No. 34), he appears to concede that the BOP properly calculated the FSA Time Credits he has earned. (*See* ECF No. 34 at 1.) Mr. Smith thus appears to have withdrawn his challenge to the *calculation* of his time credits and is now focusing primarily on the *application* of those credits. The Court therefore recommends that Mr. Smith's Petition be denied to the extent that it challenges the BOP's calculation of the FSA Time Credits he has earned.

**II.    FSA Time Credit Application**

The crux of Mr. Smith's argument is that the BOP wrongly fails to aggregate and apply his FSA Time Credits with other avenues for early release, including Good Conduct Time Credits, which together would make him much closer to release than his projected October 1, 2029 release date reflects.[4] (*See* ECF Nos. 1, 14, 16, 18.) He claims that the BOP is causing him "irreparable

---

[4] Mr. Smith also repeatedly cites to the "Elderly Pilot Detention Program," which appears to refer to the BOP's authority to release certain eligible elderly offenders to home confinement under 34 U.S.C. § 60541(g)(1)(B). In his first supplemental response, however, Mr. Smith states he "is not arguing qualification for the Elderly Pilot Detention Program here—such an argument would defeat [his] single minded purpose in requesting that his earned FSA [Time] [C]redits be

harm" by failing to apply his earned FSA Time Credits to his sentence computation immediately (ECF No. 14 at 5), and that FSA Time Credits should be reflected in his Percent of Statutory Term Served (*see, e.g.*, ECF Nos. 16 at 7-9; 18 at 2-3).

The flaw with this argument is that unlike Good Conduct Time credits, which are reflected in an inmate's projected release date, FSA Time Credits are conditional benefits contingent on numerous factors that may result in the inmate's inability to apply the FSA Time Credits for an early release. In other words, FSA Time Credits are not applied to an inmate's projected release date until closer to release because of the possibility conditions might change, such that the inmate ultimately will not be entitled to claim them.

It is well established that federal inmates have a statutorily mandated interest in Good Conduct Time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). This liberty interest exists because the BOP has no discretion to award or not award Good Conduct Time credits once the inmate is eligible. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion."); *see also Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) ("[T]o be so considered [a liberty interest], the state must have created a mandatory scheme which necessarily affects the duration of a prisoner's sentences."). An inmate's constitutional interest in Good Conduct Time Credits is reflected in the non-discretionary statutory language used to grant those credits. *See* 18 U.S.C. § 3624(a) ("A prisoner *shall* be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's

---

applied—and be applied immediately—as 'earned' should also include, per the FSA, 'applied.'" (ECF No. 14 at 3.) The Court thus focuses on his claim that his FSA Time Credits should be aggregated with Good Conduct Time Credits and immediately applied for purposes of calculating his projected release date and Percentage of Statutory Term Served.

sentence as provided in subsection (b).") (emphasis added); 28 C.F.R. § 523.20(b)(1) ("The Bureau *will* award inmates up to 54 days of GTC credit for each year of the sentence imposed by the court … the Bureau *will* initially determine a projected release date by calculating the maximum GCT credit possible) (emphasis added); 28 C.F.R. § 523.20(b)(4) ("When the inmate reaches the Bureau projected release date, the sentence will be satisfied and the inmate will be eligible for release.")

In contrast, the FSA explicitly limits the BOP's authority to apply FSA Time Credits until an inmate meets certain criteria. These limitations include a requirement that an inmate's number of earned FSA Time Credits must equal the remainder of the inmate's term of imprisonment. *See* 18 U.S.C. § 3624(g)(1)(A); *see also* 28 C.F.R. § 523.44(b)-(d). Moreover, unlike Good Conduct Time credits, the FSA clearly establishes that an inmate may lose FSA Time Credits "for violation of the requirements or rules of an EBRR Program or PA." 28 C.F.R. § 523.43(a). Stated more simply, Good Conduct Time credits, once earned, cannot be taken away for bad behavior; FSA Time Credits can. For these reasons, unlike Good Conduct Time credits, FSA Time Credits are not a general entitlement and the mere opportunity to earn credit toward the satisfaction of a sentence does not create a protected liberty interest. *Fiorito v. Fikes*, Case Nos. 22-cv-0749, 22-cv-0759, 22-cv-0797 (PJS/TNL), 2022 WL 16699472, at *6 (D. Minn. Nov. 3, 2022) ("The statute and accompanying regulations betray no expectation that [FSA Time] [C]redits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner might or might not be able to earn at various times during his detention.").

While Mr. Smith had earned 675 FSA Time Credits as of October 7, 2022, his projected release date is not until October 1, 2029. Thus, as of the date of this Report and Recommendation, Mr. Smith still has over 2,300 days left to serve. While the FSA Time Credits Mr. Smith has earned and continues to earn may afford him additional time in prerelease custody and may

potentially advance his supervised release date by a maximum of 365 days, the BOP may only apply his FSA Time Credits when his FSA Time Credits equals the remainder of time on his sentence. 18 U.S.C. § 3624(g)(1)(A); 28 C.F.R. § 523.44(b)-(d). Until that time, the possibility exists that Mr. Smith could potentially forfeit some quantity of his FSA Time Credits through disciplinary actions or by failing to maintain a low or minimum recidivism risk level. 28 C.F.R. §§ 523.43(a), 523.44(b)–(d). The number of FSA Time Credits Mr. Smith ultimately will be entitled to apply towards early release is at this point entirely speculative, and will remain speculative until his earned FSA Time Credits equal the remainder of time on his sentence. Mr. Smith's demand that the BOP immediately apply his FSA Time Credits is without merit for these reasons. *See Taylor v. Fikes*, Civ. No. 20-1364 (PJS/ECW), 2022 WL 18584395, at *15 (D. Minn. Dec. 2, 2022) (declining to engage with argument for immediate application of FSA Time Credits because prisoner's FSA Time Credits did not equal the remainder of the prisoner's sentence); *see also Mills v. Starr*, Civ. No. 21-1335 (SRN/BRT), 2022 WL 4084178, at *4 (D. Minn. Aug. 17, 2022) (finding petitioner's claim for immediate application of her FSA Time Credits lacked merit because the FSA Time Credits did not equal the remainder of petitioner's sentence).

Moreover, to the extent Mr. Smith argues that the BOP's failure to immediately apply his FSA Time Credits has delayed his eligibility for release to home confinement under the CAREs Act or as an elderly offender, the Court notes that courts in this district have repeatedly held that the BOP has exclusive authority to determine the placement of prisoners under 18 U.S.C. § 3624(c)(2), including their placement in home confinement. *See Garcia v. Eischen*, Civ. No. 22-444 (SRN/BRT), 2022 WL 4084185, at *2 (D. Minn. Aug. 16, 2022) (collecting cases). "[I]t is the BOP—not the courts—who decides whether home detention is appropriate." *Williams v. Birkholz*, Civ. No. 20-2190-(ECT/LIB), 2021 WL 4155614, at *3 (D. Minn. July 20, 2021), *report*

*and recommendation adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021). Neither the Cares Act nor the FSA alters the BOP's exclusive authority to determine the placement of prisoners. *United States v. Tuckner*, Crim. No. 16-79 (DWF), 2020 WL 4271785, at *2 (D. Minn. July 24, 2020). Mr. Smith therefore is not entitled to any specific type or place of detention.

In short, the BOP need only apply Mr. Smith's Good Conduct Time credits to calculate his projected release date or Percentage of Statutory Term Served. Because Mr. Smith's potential future release to any form of home confinement is highly discretionary, Mr. Smith has no entitlement to it. Moreover, the BOP need not immediately apply Mr. Smith's FSA Time Credits because his FSA Time Credits are contingency based and currently do not equal the remainder of time on his sentence. 18 U.S.C. § 3624(g)(1)(A); 28 C.F.R. § 523.44(b)-(d); *see also Taylor*, 2022 WL 18584395, at *15; *Mills*, 2022 WL 4084178, at *4. The Court recommends Mr. Smith's Petition be denied on these grounds.

### III.     Pending Motions

Also pending before the Court are Mr. Smith's Letter Motion (ECF No. 31), motion seeking leave to file a motion for summary judgment (ECF No. 33), and Motion for Summary Judgment (ECF No. 34). Mr. Smith's Letter Motion seeks the Court's leave to file a reply to Respondent's Supplemental Response (ECF No. 22). The Court finds the record sufficiently complete to rule on Mr. Smith's Petition and that any additional response will not aid its analysis. The Court therefore denies Mr. Smith's Letter Motion.

Mr. Smith's Motion for Summary Judgment (ECF No. 34) merely reiterates his argument that the BOP should include his FSA Time Credits in his Percent of Statutory Term Served. (*See generally* ECF No. 34.) The Court's rationale for recommending Mr. Smith's Petition be denied applies equally to his Motion for Summary Judgment. Moreover, the Court notes that a summary

judgment motion is not the proper vehicle for determining the merits of a habeas petition. *Ehlers v. Wilson,* Civ. No. 13-255 (JNE/FLN), 2015 WL 4920294, at *6 (D. Minn. Aug. 11, 2015). The Court recommends Mr. Smith's self-styled motion seeking leave to file a motion for summary judgment (ECF No. 33) and his Motion for Summary Judgment (ECF No. 34) be denied accordingly.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Mr. Smith's self-styled letter motion seeking leave to file an additional response (ECF No. [31]) is **DENIED**.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMEND THAT**:

1. Mr. Smith's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. [1]) be **DENIED**;

2. Mr. Smith's Self-Styled Motion seeking leave to file a summary judgment motion (ECF No. [33]) be **DENIED**;

3. Mr. Smith's Motion for Summary Judgment (ECF No. [34]) be **DENIED**; and

4. This matter be **DISMISSED WITH PREJUDICE**.

Dated: May 1, 2023

*s/ Dulce J. Foster*
DULCE J. FOSTER
U.S. Magistrate Judge

14

**NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).